HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TERYN SMITH, an incapacitated person, and DEBORAH AND DOUGLAS SMITH, her co-guardians,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>NORTH THURSTON SCHOOL DISTRICT,<br><br>　　　　　Defendant. | Case No. C04-5868RBL<br><br>ORDER ON MOTIONS FOR SUMMARY JUDGMENT |

**Introduction.**

This matter is before the court on the Plaintiff's Motion for Summary Judgment [Dkt.#9] and the Defendant's Motion for Summary Judgment [Dkt. #21]. At issue in both Motions is the Plaintiffs' eligibility for an award of attorneys' fees as the prevailing party under the Individuals with Disability Education Act ("IDEA"). Plaintiffs (Teryn Smith and her parents) seek the fees incurred in their efforts to administratively challenge Teryn's Individualized Education Plan ("IEP"). That effort was resolved prior to a hearing when the parties reached a settlement agreement. The settlement disposed of all issues surrounding the IEP except the Plaintiffs' right to attorneys' fees.

Plaintiffs now claim fees under the IDEA as "prevailing parties" in the dispute. The District argues that under recent Supreme Court authority, one may not be considered the "prevailing party" in a matter resolved by settlement absent some sort of judicial imprimatur upon the settlement, even if the Plaintiff obtains through settlement all she sought through litigation. *See Buckhannon Board & Care Home, Inc. v. West Virginia*

*Department of Health & Human Resources*, 532 U.S. 598, 604 (2001). The District also argues that the changes in Teryn's IEP before and after settlement of the case were minimal, and that she and her parents did not "prevail" in the suit in any event[1].

Plaintiffs disagree, and argue that Ninth Circuit authority both before and after *Buckhannon* holds that a party to a private settlement can "prevail" absent a judicial sanction of the settlement. They argue that the changes achieved in Teryn's IEP through settlement were significant, and that they therefore prevailed in the action.

**Summary of Facts.**

The factual background to this dispute is largely agreed upon. Teryn Smith is a developmentally disabled 12th grader at North Thurston High School. She has been in the District eight years, and has received one-on-one special education support throughout that time. Each year, the District and Teryn's parents met to discuss and formulate an IEP for Teryn. At issue in this case is the 2004 IEP, which resulted from a June 2004 meeting among the Smiths and members of the District's "IEP team," including Gloria Mott, Teryn's special education teacher.

The IEP outlined the number of minutes per week that Teryn would be instructed in various programs. Some of these were specific to her, including "life skills" (totaling 1525 minutes per week) such as leisure skills and adapted physical education, physical therapy, occupational therapy and communication. The IEP also called for 200 minutes per week of "regular" education with special education support. The June 2004 also deleted 30 minutes per week of vision services as compared to Teryn's prior IEP.

It was agreed that Teryn's regular education class would be Digital Imagery in the fall of 2004. However, due to a registration error or confusion, she was not timely registered in that class, leaving an opening in her schedule. The District sought to change her IEP to replace that time with special education. Teryn's parents did not agree, and the District ultimately (on November 1) enrolled Teryn in a regular education drawing class. It was also determined that Teryn would take the Digital Imagery class in the second semester of the school year.

In the meantime, however, Teryn's parents sought a due process hearing under the IDEA. The hearing

---

[1]The District also argues that some of the fees sought would not be recoverable under the IDEA in any event.

ORDER
Page - 2

was scheduled for December, 2004. In October, Teryn's parents moved for a "Stay Put"[2] and to revise the issues to be addressed in the hearing. The issues were revised, and the Administrative Law Judge ordered an evidentiary hearing on October 25. Instead, the parties held another IEP meeting on that date, and resolved the dispute (with the exception of the attorneys' fees issue now before this court). Teryn's IEP was revised again as the result of that settlement.

The Plaintiffs argue that the resulting IEP modifications demonstrate that they were the prevailing parties. They emphasize that the District sought to eliminate Teryn's regular education classes once the Digital Imagery class was not available, and that they were successful in their resistance to that change. They argue that this and other changes in the IEP were more than technical or *de minimus* changes. The other changes they cite are: (1) Teryn was provided adaptive physical education every week rather than rotating with leisure skills on an alternating basis; (2) Teryn's IEP expressly incorporated (and therefore made enforceable) the District's "policy" against having an aide of the opposite sex be alone with a student; (3) the revised IEP specified that Teryn could use vision consult services on an "as needed" basis; (4) the revised IEP included a "transition plan" and assessment which was not specifically included in the June 2004 IEP; and (5) the IEP envisioned a level of communication with Teryn's parents that was greater than that required under the IDEA.

The District argues that the IEP was changed or clarified in only four relatively minor respects, and that the revised IEP changed primarily the wording, and not the practice, in these areas: (1) a "more explicit reference" to the existing fact that Teryn would be provided a one-on-one aide in her regular education class; (2) a "reassurance" that Teryn would receive individualized attention in various aspects of her school day; (3) a "clarification" that Teryn would not normally be left alone with a male aide; and (4) a "clarification" that Teryn's team could access vision services as needed.

**Summary Judgment Standard**.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere

---

[2] The IDEA's "Stay Put" provision requires that a child remain in his or her then current educational placement pending resolution of the IDEA hearing.

existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**Attorneys' Fees to the Prevailing Party**.

The relevant portion of the IDEA provides:

> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs--
> **(I)** to a prevailing party who is the parent of a child with a disability;
> **(II)** to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or
> **(III)** to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

20 U.S.C. §1415(i)(3)(B).

The parties acknowledge that *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 604 (2001), is the Supreme Court's latest opinion on what constitutes a "prevailing party" for purposes of awarding attorneys' fees under a variety of federal statutes. There, the Supreme Court expressly rejected the previously accepted "catalyst theory" for the achievement of prevailing party status. It held that permitting fees to a party which has not obtained some judicially sanctioned change in the legal relationship of the parties is insufficient to confer prevailing party status.

Under the catalyst theory, a party could be considered to have prevailed if the lawsuit brought about a voluntary change in the defendant's conduct, even if the suit was not pursued to judgment. Instead, *Buckhannon* held that prevailing party status can only be achieved through an enforceable judgment on the merits, or some sort of "judicially sanctioned" settlement, such as a consent decree.

The Ninth Circuit has since held (along with "all of the other Circuits to confront the issue") that *Buckhannon* applies to claims under the IDEA. *See Shapiro ex rel. Shaprio v Paradise Valley United School District*, 374 F.3d 857, 865 (9th Cir. 2004). *Shapiro,* citing *Buckhannon,* held that in order to "prevail" for

purposes of the fee-shifting provision of the IDEA, a plaintiff "must not only achieve some material alteration of the legal relationship of the parties, but that change must also be judicially sanctioned." *Id.; also citing Roberson v. Guiliani*, 346 F.23d 75, 79 (2nd Cir. 2003).

Plaintiffs do not concede that *Buckhannon* specifically appies to the IDEA, and argue that *Shapiro* did little more than quote a Second Circuit case [*Roberson*] which in turn had a distinguishable factual context. They also argue that *Shapiro* did not directly address another Ninth Circuit precedent, *Barrios v. California Interscholastic Federation*, 277 F.3d 1128 (9th Cir. 2002), which (despite *Buckhannon*) reiterated the prior Ninth Circuit view that a "legally enforceable settlement agreement" resulting in a "material alteration of the parties legal relationship" was sufficient to confer "prevailing party" status.

*Barrios* cited and relied upon *pre-Buckhannon* precedent, including *Fisher v. SJB -P.D.*, 214 F.3d 1115 (9th Cir. 1999) ("Under applicable Ninth Circuit law, a plaintiff "prevails" when he or she enters into a legally enforceable settlement agreement against the defendant."). In *Barrios*, the plaintiff baseball coach asserted an ADA claim against his employer, a school district. The District had ordered him not to be on the baseball field in his wheelchair. He eventually sued and the parties settled. The Ninth Circuit found that the agreement was sufficient to confer prevailing party status on the plaintiff:

> Here, the settlement agreement prohibits the [Defendant] from excluding Barrios from on-field coaching of baseball games, and requires it to pay Barrios $10,000 in damages. Given that Barrios can enforce the terms of the settlement agreement against the [Defendant], the district court correctly concluded that Barrios was the "prevailing party" in his civil rights litigation.
> . . .
>
> While dictum in *Buckhannon* suggests that a plaintiff "prevails" only when he or she receives a favorable judgment on the merits or enters into a court-supervised consent decree, [] we are not bound by that dictum, particularly when it runs contrary to this court's holding in *Fischer,* by which we are bound. Moreover, the parties, in their settlement, agreed that the district court would retain jurisdiction over the issue of attorneys' fees, thus providing sufficient judicial oversight to justify an award of attorneys' fees and costs.

*Barrios*, 277 F.3d at 1135.

The question, then, is whether *Shapiro* or *Barrios* accurately reflects the state of the law following *Buckhannon*. Notwithstanding the Barrios court's characterization of the *Buckhannon* rule as "*dicta*," it seems clear that after that case, a private settlement must do more than change the legal relationship between the partes, and it must carry more of a judicial imprimatur than the right to have a settlement

ORDER
Page - 5

agreement enforced in court, in order to confer "prevailing party" status.   Simply preserving the jurisdiction of the presiding court to enforce a private settlement agreement is not akin to the court "sanctioning" the agreement.  Doing so is not measurably different than simply agreeing, in any contract, to the jurisdiction and venue of a suit seeking to enforce the agreement.  In such cases, it cannot be said that the court has sanctioned the agreement – the court simply has no stake in the agreement, and no input or oversight as to its terms.  *Buckhannon* requires more, as *Shapiro* correctly points out.  If and to the extent Barrios can be read to permit an award of fees based only on the parties' agreement that the court retains jurisdiction, it is inconsistent with *Buckhannon*.

   For these reasons, the court agrees with the District that the settlement agreement at issue is not sufficient to confer prevailing party status under the IDEA or *Buckhannon* as a matter of law.  This is true even if, as the Plaintiffs argue, they did achieve more than a technical or *de minimus* victory through the settlement agreement.   The court need not  address the magnitude of the success, however, as the Smiths have not prevailed.  Plaintiffs' Motion for Summary Judgment [Dkt. #9] is DENIED, and the District's Motion for Summary Judgement [Dkt. #21] is GRANTED.

   DATED this 12th day of December, 2005

*(signature)*

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE